**IDAHO CONSERVATION LEAGUE, INC., Idaho Sportsmens' Coalition, Inc.; Committee for Idaho's High Desert; Idaho Environmental Council; Idaho Natural Resources Legal Foundation, Plaintiffs–Appellees,**

v.

**Robie G. RUSSELL, in his official capacity as Regional Administrator for E.P.A.; Lee Thomas, Administrator, EPA; United States Environmental Protection Agency, Defendants–Appellants,**

**and**

**Intermountain Forest Industry Association, Defendant-Intervenor.**

**No. 90–35430.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1991.

Decided Oct. 11, 1991.

Dirk D. Snel, U.S. Dept. of Justice, Katherine Hazard, Land and Natural Resources Div., Roland C. Dubois, Office of Gen. Counsel, Environmental Protection Agency, Washington, D.C., for defendants-appellants.

Victor M. Sher, Sierra Club Legal Defense Fund, Seattle, Wash., for plaintiffs-appellees.

Before BROWNING, CANBY and TROTT, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

The Environmental Protection Agency (EPA), its Administrator, and its Regional Administrator, appeal from a district court order requiring the EPA to pay plaintiffs $75,070 in costs and attorney's fees pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d) (West Supp.1990). We reverse.

I

Section 303(c) of the Clean Water Act requires each state to submit water quality standards to the EPA for approval. 33 U.S.C. §§ 1313(c)(1) & (2) (West 1986 & Supp.1990). If a state's proposed water quality standards are rejected by the EPA,

the EPA must notify the state of the deficiencies within 90 days and specify the changes required for approval. *Id.* § 1313(c)(3). The state then has 90 days to incorporate the EPA's suggestions and resubmit the standards. *Id.* If the state fails to do so, the EPA "shall promptly prepare and publish" federal regulations in lieu of the state regulations. *Id.* § 1313(c)(4).

Pursuant to Section 303(c), the State of Idaho submitted a set of water quality standards to the EPA for approval. The EPA rejected the proposed standards in June, 1985, as inconsistent with the substantive requirements of the Clean Water Act. Idaho did not submit a revised set of standards within the 90 day period but the EPA did not enact federal water quality regulations in lieu of state regulations. The Idaho Conservation League and thirteen other groups filed suit against the EPA, its Administrator, and its Regional Administrator, under Section 505(a)(2) of the Clean Water Act, 33 U.S.C. § 1365(a)(2) (West 1986 & Supp.1990), alleging the EPA had failed to discharge a mandatory duty to promulgate water quality regulations on behalf of the State of Idaho. The State of Idaho and various trade organizations intervened.

After plaintiffs had moved for summary judgment on their claim that the EPA had failed to perform its mandatory duty and the EPA had filed a cross-motion for summary judgment seeking dismissal of the complaint with prejudice, but before the district court ruled on the motions, plaintiffs requested the proceedings be stayed to permit settlement negotiations. The proceedings were stayed while plaintiffs, the State of Idaho, and the trade associations negotiated, leading to a settlement agreement in August, 1989. The EPA was not involved in the settlement negotiations and was not a party to the settlement agreement, which required the State of Idaho to adopt specified water quality standards. Promulgation of the standards was conditioned, among other things, on dismissal with prejudice of plaintiffs' suit. Plaintiffs moved to dismiss and the court granted the motion on September 14, 1989, without ruling on plaintiffs' motion for summary judgment or the EPA's cross-motion.

Idaho adopted the water quality standards on September 5, 1989, and they have since been approved by the EPA. The State of Idaho's enactment of regulations relieved the EPA of any obligation to promulgate federal regulations. *Id.* § 1313(c)(4). Upon plaintiffs' motion, the district court ordered the EPA to pay plaintiffs $75,070 in costs and attorney's fees. The EPA appeals.

## II

■ Section 505(d) of the Clean Water Act permits the district court to award costs and attorney's fees to "any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d) (West Supp. 1990). Whether a party has prevailed or substantially prevailed is a factual question reviewed for clear error. *McQuiston v. Marsh*, 790 F.2d 798, 800 (9th Cir.1986). The district court did not err in concluding plaintiffs had prevailed below.

■ A party need not obtain any formal judicial relief to be a prevailing party. *Sablan v. Dept. of Finance of the Commonwealth of the Northern Mariana Islands*, 856 F.2d 1317, 1324 (9th Cir.1988). A party who prevails through settlement is as much entitled to prevailing party status as one who prevails through litigation. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); *Sablan*, 856 F.2d at 1324. All that is necessary is that "(1) as a factual matter, the relief sought by the lawsuit was in fact obtained as a result of having brought the action, and (2) there was a legal basis for the plaintiffs' claim." *Andrew v. Bowen*, 837 F.2d 875, 877 (9th Cir.1988).

Plaintiffs clearly satisfy this test. To determine whether the relief sought was obtained, courts look at "what the lawsuit originally sought to accomplish and what relief actually was obtained." *Id.* It is an inquiry into the " 'practical outcome realized.' " *Id.* (quoting *McQuiston*, 790 F.2d at 800). Because of this suit, plaintiffs

obtained what they wanted—satisfactory water quality regulations.

■ The second element of the test is satisfied if the suit was not frivolous. *Id.* at 878. Plaintiffs' claim was not frivolous. Plaintiffs argued Section 303(c) of the Clean Water Act imposes a mandatory duty upon the EPA to promptly promulgate water quality regulations if the state fails to do so within the 90 day period specified by Section 303(c)(3). *See* 33 U.S.C. §§ 1313(c)(3) & (4). The plain language of Section 303(c) supports plaintiffs' view. Section 303(c)(3) uses mandatory language, stating "the Administrator *shall* promulgate such standard pursuant to [Section 303(c)(4)]." *Id.* § 1313(c)(3) (emphasis added). The same mandatory language appears in Section 303(c)(4): "The Administrator [of the EPA] *shall* promptly prepare and publish proposed regulations setting forth a revised or new water quality standard" if a state fails to adopt regulations within the specified period. *Id.* § 1313(c)(4) (emphasis added). There is no case law suggesting Section 303(c) leaves the Administrator any discretion to deviate from this apparently mandatory course.

### III

■ The EPA does not seriously contest this analysis, and even suggests plaintiffs may have a valid claim for costs and attorney's fees against the State of Idaho.[1] However, the EPA contends that while plaintiffs may have "prevailed," they did not prevail against the EPA, and thus the EPA is not liable for plaintiffs' costs and fees.

The EPA's argument raises a question of law: whether a prevailing plaintiff must prevail against a particular party to be entitled to costs and fees *from* that party. Questions of law are reviewed *de novo.* *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.1984) (en banc).

Plaintiffs argue that the term "prevailing" must be interpreted more broadly in

environmental suits than in other civil suits and that attorney's fees are appropriate in this case because their suit contributed to the goals of the Clean Water Act. Plaintiffs rely on *National Wildlife Fed'n v. Hanson,* 859 F.2d 313 (4th Cir.1988). In *Hanson,* the district court ruled that the Army Corps of Engineers had not properly investigated whether certain property was wetlands and the EPA had not fulfilled its statutory duty to take appropriate corrective action. Plaintiffs sought fees and costs. Defendants contended plaintiffs had not "prevailed" because when the Corps completed a proper investigation, it could still determine the land in question was not wetlands. The court held plaintiffs had prevailed against the EPA and the Corps within the meaning of the Clean Water Act and were entitled to fees and costs.

The Fourth Circuit affirmed. The court explained that "prevailing" must be read "in light of the goals of the Clean Water Act," 859 F.2d at 316, and that it was "appropriate for courts to award fees to partially prevailing parties where the action served to promote the purposes of the Act," *id.* at 317. Because plaintiffs had successfully demonstrated the Corps had not undertaken the necessary investigation and the EPA had not taken corrective action, the court concluded plaintiffs would "still have served a key purpose of the citizen suit provision which is to ensure that agencies fulfill their duties under the [Clean Water Act] responsibly," even if plaintiffs did not prevail on the ultimate issue—whether the property was wetlands. *Id.*

The crucial difference between *Hanson* and this case is that although plaintiffs prevailed against the State of Idaho, they did not prevail even partially against the EPA.

In *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), environmental group plaintiffs failed to obtain from the EPA any of the relief they sought, but argued they should neverthe-

---

1. Plaintiffs originally sought to recover costs and attorney's fees both from the EPA and the State of Idaho. Plaintiffs voluntarily withdrew

their claim against Idaho before the district court had an opportunity to address the merits.

less receive fees for their contributions to the goals of the Clean Air Act. *Id.* at 682, 103 S.Ct. at 3276. The Court rejected this argument, holding that although the fee-shifting provision in the Clean Air Act modified "the traditional rule that a fee claimant must 'prevail' before it may recover attorney's fees," *id.* at 686, 103 S.Ct. at 3278, the "requisite indication that Congress meant to abandon historic fee-shifting principles" was lacking, *id.*[2] Among those fee-shifting principles is the notion that "the logical place to look for recovery of fees is to the *losing* party—the party legally responsible for relief on the merits." *Kentucky v. Graham,* 473 U.S. 159, 164, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985) (plaintiff who prevailed in a Section 1983 suit against governmental employees in their personal capacities not entitled to collect fees from a governmental entity). "That a plaintiff has prevailed against one party does not entitle him to fees from another party . . . ." *Id.* at 168, 105 S.Ct. at 3106.

As we have said, a party who prevails through means other than an official ruling from the court may be entitled to prevailing party status. But while the prevailing party "need not obtain formal relief, . . . . [a]t a minimum, the lawsuit must have been a catalyst that prompted the opposing party to take action . . . ." *McQuiston v. Marsh,* 790 F.2d 798, 800 (9th Cir.1986) (citations omitted). Plaintiffs' suit *was* a catalyst; it *did* prompt an opposing party to take action. The State of Idaho acted to promulgate water quality standards in response to plaintiffs' suit. The party from which plaintiffs seek their fees and costs, however, was never prompted into action. In fact, throughout the course of the litigation and settlement proceedings, the EPA apparently persisted in the same lack of action that prompted plaintiffs to sue in the first place.

Plaintiffs claim they are entitled to fees and costs from the EPA because their suit against the EPA was the catalyst that led the State of Idaho into the action plaintiffs

desired: promulgation of adequate water quality standards. However, plaintiffs do not suggest their suit was the catalyst for any actions by the EPA. The EPA concedes that had plaintiffs' suit prompted the EPA to advise the State of Idaho that the EPA would step in to promulgate water quality regulations if the State did not promptly establish its own adequate standards, the EPA could be held liable for plaintiffs' costs and fees. Again, however, nothing in the record, the briefs or oral argument indicated that the litigation caused the EPA to do anything to further or facilitate settlement.

It is possible that had the State of Idaho not stepped in and relieved the EPA of fulfilling the duties plaintiffs claimed were mandatory, the EPA would have been ordered to take action and plaintiffs could then be said to have prevailed against it. It is also possible, however, that the EPA would have been vindicated in its position that it had not violated any mandatory duty. Without any ruling from the court, any compromise in the EPA's position that the State of Idaho should promulgate its own standards (as in fact Idaho did), or indeed any action from the EPA whatsoever, we cannot fairly say plaintiffs prevailed against the EPA nor characterize the EPA as a "losing" party.

Although research has disclosed little authority on which parties may be made to pay fees and costs to a prevailing party, the case most directly on point, *Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid,* 717 F.2d 964 (6th Cir.1983), *aff'g* 537 F.Supp. 422 (N.D.Ohio 1982), accords with this reasoning. In that case, the plaintiffs brought suit against the City to require the City to comply with federal fair housing standards, and against the Department of Housing and Urban Development (HUD) to enjoin HUD funding of certain city projects to put further pressure on the City to comply with the housing standards. 717 F.2d at 965.

---

**2.** The Court noted its discussion of the Clean Air Act's fee-shifting provision applied to the fee-shifting provisions of several other statutes, including the Clean Water Act. 463 U.S. at 682 n. 1, 103 S.Ct. at 3276 n. 1.

The parties reached an out-of-court settlement requiring the City to comply. HUD did not agree to terminate funding to the City. 537 F.Supp. at 425. In fact, HUD did not agree to take any action except what the court viewed as the nominal step of providing the plaintiffs with information to which they were entitled under the Freedom of Information Act. *Id.* Because the plaintiffs obtained virtually no relief from HUD, the Sixth Circuit found they had not "prevail[ed] ... *against HUD.*" 717 F.2d at 967 (quoting 537 F.Supp. at 425) (emphasis added). Here, the EPA has provided even less relief than did HUD, since the EPA did not participate at all in the negotiations nor agree to take even a nominal step. *See also Omaha Tribe of Nebraska v. Swanson,* 736 F.2d 1218, 1219–22 (8th Cir.1984) (where plaintiff sued a trespasser, seeking ouster, and the United States, claiming breach of the duty to take action against the trespasser, and then settled with the trespasser, plaintiff could not collect fees and costs from the United States since nothing in the settlement agreement indicated plaintiff obtained any of the relief it sought *from the United States* ).

We conclude that because the district court issued no ruling, interim or final, against the EPA, because the EPA did not participate in the settlement negotiations, because plaintiffs do not contend their suit served as a catalyst for any actions by the EPA, and because the EPA, which had consistently contended Idaho should establish its own water quality standards, in substance prevailed on that issue, plaintiffs did not prevail against the EPA and are therefore not entitled to collect their costs and fees from the EPA.

REVERSED.[3]

3. Because we hold that plaintiffs are not entitled to recover fees and costs, we do not address the EPA's contention that the award was too high.