**Philip S. HEEREN, Plaintiff–Appellant,**

v.

**CITY OF JAMESTOWN, KENTUCKY; United States Department of Housing and Urban Development; and Henry G. Cisneros, Secretary of Housing and Urban Development, Defendants–Appellees.**

No. 93–5723.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 19, 1994.

Decided Oct. 25, 1994.

Benjamin Cowgill, Jr. (argued and briefed), Landrum & Shouse, Lexington, KY, for Philip S. Heeren.

David A. Owen, John C. Bender, V. Thomas Fryman, Jr., Greenebaum, Doll & McDonald, Lexington, KY, for City of Jamestown, KY.

Michael F. Spalding, Asst. U.S. Atty., Office of the U.S. Atty., Louisville, KY, and Albert M. Ferlo, Jr., and Joan M. Pepin (argued and briefed), U.S. Dept. of Justice, Land & Natural Resources Div., Washington, DC, for U.S. Dept. of Housing and Urban Development and Henry G. Cisneros.

Before: KENNEDY, WELLFORD, and NELSON, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff Philip S. Heeren appeals the District Court's denial of his application for attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Plaintiff seeks attorney fees from the United States Department of Housing and Urban Development ("HUD") after settlement of a lawsuit alleging violations of the National Environmental Policy Act ("NEPA") by HUD and the City of Jamestown, Kentucky. On appeal, plaintiff argues that the District Court erred as a matter of law by holding that EAJA required him to prevail against HUD in order to be awarded attorney fees. Alternatively, plaintiff argues that the District Court erred in holding that he did not prevail against HUD. Finally, plaintiff argues that the District Court erroneously found that HUD's position was substantially justified. For the following reasons, we affirm.

### I.

In October 1990, plaintiff initiated the lawsuit underlying his claim for attorney fees against HUD and Jamestown alleging that the wastewater treatment project known as the "Lake Cumberland Pipeline" violated NEPA and other federal statutes. NEPA requires that federal agencies prepare an environmental impact statement and explore alternatives for certain "major" federal projects. 42 U.S.C. § 4332. Jamestown was

utilizing federal grants from HUD to build the Lake Cumberland Pipeline. Pursuant to the express language of the Housing and Community Development Act, HUD delegated its environmental protection responsibilities, including its obligations under NEPA, to Jamestown. *See* 42 U.S.C. § 5304(g). As a grantee, Jamestown "assume[d] all of the responsibilities for environmental review, decisionmaking, and action pursuant to [NEPA]." *Id.* § 5304(g)(1). Jamestown's certifying officer consented to "assume the status of a responsible Federal official under [NEPA]," and consented "on behalf of the [grantee] . . . and himself to accept the jurisdiction of the Federal courts for the purpose of enforcement of his responsibilities as such an official." *Id.* § 5304(g)(3)(D). Before HUD released the funds, Jamestown certified that it had fulfilled the obligations imposed by NEPA. *Id.* § 5304(g)(2). HUD's approval of this certification satisfied HUD's responsibilities under NEPA. *Id.*

Plaintiff contended that Jamestown's environmental assessment ("EA"), required by NEPA, was inadequate and that Jamestown had misled HUD in its certification of compliance. The District Court entered a preliminary injunction that prohibited Jamestown from utilizing HUD grant money for the project, and ordered HUD to suspend funding of the project. Plaintiff and Jamestown eventually reached a settlement that resulted in the dissolution of the preliminary injunction, and required Jamestown to postpone the project for a year while a Technical Advisory Committee assessed the alternatives. HUD did not participate in the settlement negotiations, and was not a party to the settlement agreement. As part of the settlement, plaintiff agreed not to seek attorney fees from Jamestown.

Subsequently, plaintiff sought attorney fees from HUD pursuant to EAJA, which provides for attorney fees for parties who prevail in litigation against the United States. *See* 28 U.S.C. § 2412. The District Court denied plaintiff's application for attorney fees for two reasons. First, the District Court found that although plaintiff had prevailed in the litigation vis-a-vis Jamestown, he did not prevail vis-a-vis HUD as required

by EAJA. Second, the District Court found that HUD's position in the litigation was substantially justified because HUD had lawfully delegated its NEPA compliance obligations to Jamestown.

## II.

"Concerned that the Government, with its vast resources, could force citizens into acquiescing to adverse Government action, rather than vindicating their rights, simply by threatening them with costly litigation, Congress enacted the EAJA, waiving the United States' sovereign and general statutory immunity to fee awards and creating a limited exception to the 'American Rule' against awarding attorneys fees to prevailing parties." *Pierce v. Underwood,* 487 U.S. 552, 575, 108 S.Ct. 2541, 2555, 101 L.Ed.2d 490 (1988) (Brennan, J., concurring). EAJA provides for attorney fees to the "prevailing party" in litigation against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A party may "prevail" for purposes of EAJA by obtaining a settlement that satisfies the goals of the litigation. *Id.* § 2412(d)(2)(G).

Plaintiff's first argument is that the District Court erred as a matter of law by holding that plaintiff must specifically prevail against HUD to be eligible for attorney fees under EAJA. Plaintiff argues that EAJA does not limit attorney fees to parties who prevail *against* the United States, but refers more broadly to "prevailing party." Because the District Court found that plaintiff had prevailed against Jamestown, plaintiff argues that he "prevailed" in the litigation for the purposes of EAJA.

The District Court rejected this argument, relying on the Supreme Court's decision in *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In *Graham,* the Supreme Court interpreted the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, which like EAJA provides for attorney fees to prevailing parties in certain circumstances. The Court held that while section 1988 does not define "prevailing party," under traditional fee-shifting principles

"it is clear that the logical place to look for recovery of fees is to the losing party—the party legally responsible for relief on the merits." *Id.* at 164, 105 S.Ct. at 3104. "Thus, liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against ... § 1988 does not authorize a fee award against that defendant." *Id.* at 165, 105 S.Ct. at 3105.

██ We agree with the District Court that the reasoning in *Graham* applies with equal force to EAJA. "The legislative history of section 2412 indicates that Congress intended that 'prevailing party' as used in the Equal Access to Justice Act be read consistently with its use in other fee-shifting statutes." *Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid,* 717 F.2d 964, 966 n. 2 (6th Cir.1983) (citing H. Rep. No. 96–1418, at 11, U.S.Code Cong. & Admin. News 1980, pp. 4953, 4984). *See also Ruckelshaus v. Sierra Club,* 463 U.S. 680, 691–92, 103 S.Ct. 3274, 3280–81, 77 L.Ed.2d 938 (1983) (holding that similar attorney fees provisions should be interpreted consistently). Moreover, waivers of immunity should be interpreted in favor of the sovereign. *Id.* at 685, 103 S.Ct. at 3277–78. A party, therefore, must prevail against the United States to collect attorney fees under EAJA. Other circuits have considered this issue and reached the same conclusion. *See Omaha Tribe of Nebraska v. Swanson,* 736 F.2d 1218, 1222 (8th Cir.1984); *Idaho Conservation League, Inc. v. Russell,* 946 F.2d 717, 720–21 (9th Cir.1991). Accordingly, we affirm the District Court's holding that in order to receive attorney fees under EAJA from HUD, plaintiff must have prevailed in the underlying litigation vis-a-vis HUD.

██ Plaintiff alternatively argues that he did prevail vis-a-vis HUD because he successfully sought a preliminary injunction that barred HUD from disbursing additional grant money to Jamestown. The District Court held that although plaintiff prevailed vis-a-vis Jamestown, he did not prevail vis-a-vis HUD. The District Court's determination of whether a party prevailed is a finding of fact that will not be disturbed unless it is clearly erroneous. *See City of Euclid,* 717

F.2d at 967. In *City of Euclid,* this Court applied a two-part test to determine whether a party who settled litigation against the United States was a "prevailing party" under EAJA. *Id.* at 966–67. First, the court must ask if "as a matter of fact, the plaintiff's lawsuit was a necessary and important factor in achieving the relief desired." *Id.* at 966. If the court "answers this first query affirmatively," the court must determine "whether the relief obtained resulted from a gratuitous act on the defendant's part or whether defendant's actions were mandated by law." *Id.* The test assists a district court in determining if the lawsuit served as a catalyst, and "prompt[ed] defendants to take the desired action." *Id.*

██ Applying this test, the District Court found that plaintiff's lawsuit did not prompt HUD to take any action at all. The District Court characterized HUD's involvement as a "disinterested observer, ready to comply with this Court's rulings but taking no position on the merits of Plaintiff's and Jamestown's arguments." *Heeren v. City of Jamestown,* 817 F.Supp. 1374, 1375 (W.D.Ky.1992). Although plaintiff did successfully enjoin HUD from releasing additional funds to Jamestown, the preliminary injunction was later dissolved without any change in HUD's position or any concession on HUD's part. Moreover, because Jamestown was simultaneously enjoined from using any HUD money for the project, the value of the injunction against HUD was negligible. *See Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) ("[A] technical victory may be so insignificant ... as to be insufficient to support prevailing party status."). Plaintiff, therefore, fails to satisfy the first requirement for prevailing party status because his lawsuit against HUD was not "a necessary and important factor in achieving the relief desired." *City of Euclid,* 717 F.2d at 966.

The District Court found that it was Jamestown—not HUD—who changed its behavior in response to plaintiff's lawsuit and the subsequent injunction by agreeing to take action that the law required. *See Idaho Conservation League,* 946 F.2d at 720–21

(holding that a plaintiff is only eligible under EAJA for attorney fees from the party who was prompted into action). As a result of the litigation, Jamestown agreed to halt the project until a full environmental assessment could be completed. HUD's role in the litigation was minimal. Indeed, HUD was not even a party to the settlement. *See Texas State Teachers Ass'n,* 489 U.S. at 792, 109 S.Ct. at 1493 ("Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."). We, therefore, conclude that the District Court's finding that plaintiff did not prevail vis-a-vis HUD is not clearly erroneous.

■ Plaintiff next argues that he prevailed against HUD because Jamestown was acting as HUD's agent. Specifically, plaintiff contends that HUD should be responsible for any attorney fees under EAJA that Jamestown is liable for as a "federal official" for purposes of NEPA. As part of the settlement, however, plaintiff relinquished any right he may have had to collect attorney fees from Jamestown. Consequently, we do not need to decide whether Jamestown's status as a federal official for purposes of NEPA extends to EAJA, and, if so, whether it is Jamestown or HUD who would be responsible for attorney fees. After absolving Jamestown of any liability for attorney fees, plaintiff may not attempt to collect attorney fees from HUD for Jamestown's failure to comply with NEPA.

■ Finally, plaintiff argues that the District Court erred by finding that HUD's position was substantially justified. The United States' position is "substantially justified" under EAJA if it is "justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. We review a district court's determination of whether the United States' position was substantially justified for abuse of discretion. *Id.* at 562–63, 108 S.Ct. at 2548–49.

■ The District Court found that HUD's position was substantially justified because HUD lawfully delegated its NEPA compli-

ance duty to Jamestown pursuant to the Housing and Community Development Act (the "Act"), 42 U.S.C. § 5301 *et seq.* The Act requires grantees, such as Jamestown, to "assume all of the responsibilities for environmental review, decisionmaking, and action pursuant to [NEPA]." 42 U.S.C. § 5304(g)(1). The grantee's certifying officer is required to consent to "assume the status of a responsible Federal official under [NEPA]," and consent "on behalf of the [grantee] ... and himself to accept the jurisdiction of the Federal courts for the purpose of enforcement of his responsibilities as such an official." *Id.* § 5304(g)(3)(D). Before funds are released, grantees must certify their compliance with NEPA to HUD. *Id.* § 5304(g)(2). The approval of this certification by the Secretary of HUD "shall be deemed to satisfy [the Secretary's] responsibilities under [NEPA]". *Id.* "Thus, the statute makes clear that Congress intended to transfer NEPA responsibilities from the federal agency to the local grant applicant." *Brandon v. Pierce,* 725 F.2d 555, 560 (10th Cir.1984).

Plaintiff does not claim that HUD improperly approved Jamestown's certification of compliance. Rather, plaintiff argues that once HUD learned about the allegations that Jamestown was not *substantively* complying with NEPA, HUD should have taken action. It was not HUD's responsibility, however, to monitor Jamestown's substantive compliance with NEPA. Plaintiff's argument would require that HUD assume responsibilities that Congress expressly authorized HUD to delegate. We, therefore, reject plaintiff's argument and hold that the District Court did not abuse its discretion by finding that HUD's position was substantially justified.

### III.

Accordingly, the judgment of the District Court is **AFFIRMED.**