46 F.3d 1139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CITIZENS FOR A SUITABLE HIGHWAY; Cascade Geographic
Society; Michael P. Jones, Plaintiffs-Appellants,
v.
Donald E. FORBES; Wilder Construction Co., Inc.,
Defendants-Appellees.
 No. 93-35267.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 10, 1995.
Decided Jan. 20, 1995.
 
 1
 Before: PREGERSON, TROTT, Circuit Judges, and FITZGERALD,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiffs-Appellants Citizens for a Suitable Highway, a non-profit corporation, Cascade Geographic Society, also a non-profit corporation, and Michael P. Jones, a resident of Oregon, ("Citizens") appeal the district court's order denying their petition for attorneys' fees in their suit against Donald E. Forbes, Director of the Oregon Department of Transportation, and Wilder Construction Company, Inc. ("ODOT"). We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 4
 In early 1987, the Oregon Department of Transportation contracted with Wilder Construction Company to reconstruct a portion of U.S. Highway 26 in the area of Welches, Oregon. Local groups asked the construction company to place certain excess soil from the reconstruction in an area on property that belonged to the Welches School district. The school planned to build a baseball field on that site. Wilder Construction Company and Gary Kennen, ODOT's project manager, agreed.
 
 
 5
 According to Kennen, the Welches School site did not appear to be a wetland. The site had recently been logged and contained scotch broom, a non-native plant not associated with wetlands, and hummocks created by previous fill material.
 
 
 6
 In the summer of 1987, Michael Jones, a resident of Oregon, observed Wilder Construction Company dump soil onto the Welches School site. In the fall of 1990, Jones complained to the U.S. Fish and Wildlife Service ("FWS") about the dumping. A FWS representative toured the Welches School site and told Jones that he would notify the Army Corps of Engineers ("Corps") about the fill.
 
 
 7
 In March 1991, Donald E. Weidinger, an environmental protection specialist of the Corps received information that fill material had been placed in a wetland belonging to the Welches School District. In April 1991, Weidinger met with Welches School District officials, Jones, and ODOT representatives to remedy the violation.
 
 
 8
 In October 1991, Weidinger issued the Welches School District and ODOT a formal Cease and Desist Order, requiring them to remove the fill and restore the site in a manner consistent with the expectations of the Corps. Weidinger avers that the issuance of this order was not prompted by Jones' complaints about the dumping.
 
 
 9
 In March 1992, officials of the Welches School District and ODOT met with Weidinger to resolve how they could comply with the Corps' enforcement order. Weidinger told them that unless they reached an agreement on sharing the removal costs, he would refer the matter to the U.S. Department of Justice for further action. By April 1992, an agreement was reached on the division of costs. In June 1992, the parties finished negotiating all the arrangements for removing the fill.
 
 
 10
 On April 14, 1992, Jones, Citizens for a Suitable Highway, and Cascade Geographic Society[1] ("Citizens") filed a 60-day notice of intent to file suit against ODOT and Wilder Construction Company for discharging fill material into a wetland without a permit as required by the Clean Water Act, 33 U.S.C. Sec. 1311(a) (1988). Citizens formally filed their complaint on June 29, 1992. Citizens amended its complaint on September 15, 1992. The amended complaint did not name the Welches School District as a defendant because Citizens did not seek to have the fill removed; rather, the complaint sought declaratory relief and monetary relief to create or enhance another wetland.
 
 
 11
 On September 30, 1992, the parties to Citizens' lawsuit negotiated a settlement whereby Wilder and ODOT agreed to pay Citizens $38,000 to drop the lawsuit. The parties agreed that the $38,000 would be used to create, enhance, or restore the Salmon/Sandy River watersheds, which are located in the ecological vicinity of the Welches School wetland. On December 2, 1992, the parties signed a consent decree that reflected this agreement. The consent decree was approved by United States District Court Judge Owen M. Panner.
 
 
 12
 The consent decree contained a provision which is the subject of the instant appeal.
 
 Paragraph 4 of the consent decree states:
 
 13
 Neither entry of this Consent Decree, nor its substantive terms (including the payment of money by defendants pursuant to paragraph 1 of this Decree, and the designated use for such payment) shall be considered by the court when determining plaintiffs' entitlement to reasonable costs associated with bringing this action.
 
 
 14
 On February 9, 1993, the parties signed an amended consent decree which also contained this provision. The consent decree was amended to require the defendants to place the $38,000 in an escrow account instead of paying it directly to the plaintiffs.
 
 
 15
 On February 11, 1993, the district court denied Citizens' petition for attorneys' fees, reasoning that Citizens' suit did not prompt ODOT and Wilder Construction Company to remove the fill on the Welches School wetland. Pursuant to the terms of the amended consent decree, the district court excluded consideration of the $38,000 payment to Citizens in its decision. Citizens now appeals.
 
 ANALYSIS
 
 16
 We review the district court's denial of a petition for attorneys' fees for an abuse of discretion. In re Washington Public Power Supply System, 19 F.3d 1291, 1296-97 (9th Cir.1994). The interpretation of a consent decree is a question of law we review de novo. Collins v. Thompson, 8 F.3d 657, 658-59 (9th Cir.1993), cert. denied, 114 S.Ct. 2133 (1994).
 
 
 17
 The Clean Water Act authorizes the district court to award costs and attorneys' fees to "any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. Sec. 1365(d). Whether a party has prevailed or substantially prevailed is "a factual question reviewed for clear error." Idaho Conservation League, Inc. v. Russell, 946 F.2d 717, 719 (9th Cir.1991).
 
 
 18
 In Idaho Conservation League, we noted that a party need not obtain any formal judicial relief to be a prevailing party; rather "all that is necessary is that (1) as a factual matter, the relief sought by the lawsuit was in fact obtained as a result of having brought the action, and (2) there was a legal basis for the plaintiffs' claim." Id. (Citations omitted).
 
 
 19
 To determine whether relief sought was obtained, courts compare what the lawsuit originally sought to accomplish with what relief actually was obtained. Id. The second element of the attorneys' fees test is satisfied if the suit was not frivolous. Id. at 720. We conclude that the district court did not abuse its discretion in denying Citizens its petition for attorneys' fees.
 
 A. Prevailing Party Status
 
 20
 The district court concluded that Citizens was not a prevailing party because Citizens' action did not prompt ODOT and Wilder Construction Company to remove the fill from the Welches School site. We agree.
 
 
 21
 The record shows that by April 1992, ODOT and the Welches School District had already agreed to the division of costs for removing the fill when Citizens filed its intent to sue. The lack of an agreement on the division of costs had up until that time stalled the actual removal of the fill. By June 1992, when Citizens filed its formal complaint, ODOT and the Welches School District had finished negotiating all the arrangements for removing the fill. Thus, the district court correctly concluded that Citizens' suit did not prompt ODOT and the Welches School District to remove the fill.
 
 
 22
 Indeed, as the district court noted, the record shows that Citizens' suit served to impede the expeditious removal of the fill. Evidence exists to show that the suit may have delayed and complicated the negotiation process. For example, Weidinger, the environmental protection specialist from the Army Corps of Engineers stated: "I do not view this successful outcome as being the result of any action by plaintiffs, however, for it has appeared to me that plaintiffs' involvement may have delayed progress toward complying with the ... [Cease and Desist] Order." Weidinger Affidavit at 5.
 
 
 23
 We agree with the district court that because the record shows that Citizens' suit did not prompt the removal of the fill, we need not decide whether its suit was frivolous. Accordingly, we affirm the district court's conclusion that Citizens was not a prevailing party in this action.
 
 
 24
 The only tangible result obtained from Citizens' suit is the payment of $38,000 by ODOT and Wilder Construction Company to enhance or create another wetland near the Welches School site, to which we now turn.
 
 B. Exclusion of the Amended Consent Decree
 
 25
 The district court excluded consideration of the $38,000 payment to Citizens in determining whether Citizens was entitled to attorneys' fees. We conclude that the district court properly excluded consideration of this payment.
 
 
 26
 The amended consent decree explicitly and unambiguously provided that the district court may not consider the $38,000 payment in any attorneys' fees determination. Citizens argues that the amended consent decree did not reflect accurately the agreement that the parties had negotiated orally. However, Citizens signed the amended consent decree and the initial consent decree, both of which contained the clear language that precludes the court from considering the $38,000 payment in awarding attorneys' fees.
 
 
 27
 A consent decree is essentially a contract. Rufo v. Inmates of Suffolk Jail, 112 S.Ct. 748, 757 (1992) ("A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature."). "In construing a consent decree, its scope must be discerned within its four corners." Kittitas Reclamation v. Sunnyside Valley, 626 F.2d 95, 98 (9th Cir.1980), cert. denied, 449 U.S. 1079 (1981).
 
 
 28
 Citizens points out that the transcript of the negotiation proceedings does not contain any indication that Citizens agreed to the exclusion of the $38,000 payment from the determination of attorneys' fees. In Miller v. Fairchild Industries, Inc., 797 F.2d 727, 733 (9th Cir.1986), we held that because of their contractual nature, consent decrees are construed in accordance with state law. Under Oregon law, evidence may be admitted relating to the intention of the parties if the court determines that the language of the contract is ambiguous. Deerfield Commodities v. Nerco, Inc., 696 P.2d 1096 (Or.1985).
 
 
 29
 Because we conclude that the provision precluding the court from considering the $38,000 payment in any attorneys' fees award is unambiguous, we need not turn to any extrinsic evidence of Citizens' desire to the contrary. Citizens agreed to be bound by all the terms of the amended consent decree when it signed the amended consent decree. We hold that the district court correctly excluded consideration of the $38,000 payment in determining whether Citizens was entitled to attorneys' fees.
 
 CONCLUSION
 
 30
 For the foregoing reasons, we affirm the district court's denial of Citizens' petition for attorneys' fees.
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior U.S. District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The plaintiffs alleged in their complaint that they used and enjoyed the aesthetic and educational values of the Welches School wetland, including the wildlife and vegetation that were dependent upon the wetland