IDAHO CONSERVATION LEAGUE,
et al., Plaintiffs,

v.

Carol M. BROWNER, et al., Defendants.

IDAHO SPORTING CONGRESS,
INC., Plaintiff,

v.

Carol M. BROWNER, et al., Defendants.

Nos. C96–807WD, C96–829WD.

United States District Court,
W.D. Washington.

Feb. 20, 1997.

Todd D. True, Kristen L. Boyles, Sierra
Club Legal Defense Fund, Seattle, WA, for

Idaho Conservation League, Inland Empire Public Lands Council.

D. Bernard Zaleha, Idaho Sporting Congress, Boise, ID, for Idaho Sporting Congress.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Adrianne Kline Allen, U.S. Environmental Protection Agency, Seattle, WA, Natalie M. Duval, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, DC, for Carol M. Browner, Environmental Protection Agency.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Adrianne Kline Allen, U.S. Environmental Protection Agency, Seattle, WA, for Charles C. Clarke.

## ORDER ON SUMMARY JUDGMENT MOTIONS

DWYER, District Judge.

The Clean Water Act ("CWA") aims "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters" and to attain "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water be achieved by July 1, 1983." 33 U.S.C. §§ 1251(a) and 1251(a)(2). In pursuit of that goal, the CWA regulates both pollution sources ("point sources") and water quality standards. Under the water quality approach, each state is expected to develop water quality standards and undertake public review of those standards at least every three years, a process referred to as "triennial review." 33 U.S.C. §§ 1313(a) and (c). If the standards are "new or revised," formal approval or disapproval of them by the Environmental Protection Agency ("EPA"), or by an EPA Regional Administrator, is required. 33 U.S.C. § 1313(c)(3), 40 C.F.R. § 131.21. In addition, the EPA may impose a standard regardless of whether state-promulgated standards are new or revised, if it determines that "a new standard is necessary to meet the requirements of" the CWA. 33 U.S.C. § 1313(c)(4)(B). The Ninth Circuit has stated:

> Section 303(c) of the clean Water Act requires each state to submit water quality standards to the EPA for approval. 33 U.S.C. §§ 1313(c)(1) & (2) (West 1986 & Supp.1990). If a state's proposed water quality standards are rejected by the EPA, the EPA must notify the state of the deficiencies within 90 days and specify the changes required for approval. *Id.* § 1313(c)(3). The state then has 90 days to incorporate the EPA's suggestions and resubmit the standards. *Id.* If the state fails to do so, the EPA 'shall promptly prepare and publish' federal regulations in lieu of the state regulations. *Id.* § 1313(c)(4).

*Idaho Conservation League, Inc. v. Russell,* 946 F.2d 717, 718–19 (9th Cir.1991).

The material facts here are not in dispute. On July 11, 1994, the Idaho Division of Environmental Quality ("IDEQ") submitted water quality standards ("WQS") for Idaho's waters as part of the triennial review process. On June 25, 1996, Philip Millam, Acting Director Office of Water, EPA Region 10, wrote a letter to IDEQ that approved Idaho's WQS with certain exceptions. As to the exceptions, the letter reiterated the grounds for disapproval stated in an October 25, 1995, letter which was also written by Mr. Millam. The grounds for disapproval included designations of water usage, temperature criteria (specifically for the protection of bull trout), and the exclusion of private waters. The letter mentioned that Idaho's WQS are subject to EPA review pursuant to 33 U.S.C. § 1313(c) (CWA § 303(c)) and 40 C.F.R. § 131.10. The letter said that it constituted "official notification." On August 12, 1996, the parties stipulated in writing that the June 1996 letter constituted official notification of disapproval (Dkt. # 25). The EPA now seeks to disavow the June 1996 letter and the stipulation.

To date, neither Idaho nor the EPA has promulgated improved WQS for Idaho. However, the state has asserted that new WQS on some disapproved waters may be adopted "as early as June 30, 1997."

The plaintiffs in these consolidated cases, who are nonprofit organizations concerned with water quality, allege that the EPA has violated 33 U.S.C. § 1313(c) in that it has failed to timely approve or disapprove Idaho's WQS and, upon formal disapproval, to promulgate substitute standards. They seek

injunctive and declaratory relief. They now move for summary judgment, contending that, as a matter of law, the EPA has failed to exercise its mandatory duties under 33 U.S.C. §§ 1313(c)(3) and 1313(c)(4)(A). The defendant EPA Administrator (referred to for convenience as the "EPA") has also moved for summary judgment, contending that her duties are either satisfied or discretionary and that plaintiffs' claims must therefore be dismissed. The matter has been fully briefed, and oral argument on the motions was heard on February 10, 1997. There is no genuine issue of material fact for trial, and summary judgment is appropriate under Fed.R.Civ.P. 56.

■ The motions call for a decision as to (1) whether the EPA formally disapproved Idaho's submitted WQS under § 1313(c)(3) and, if so, (2) whether the EPA under § 1313(c)(4)(A) now has a mandatory duty to prepare and publish new Idaho WQS.

The CWA provides, in pertinent part:

If the Administrator determines that any such revised or new standard is not consistent with the applicable requirements of this chapter, he [sic] shall not later than the ninetieth day after the date of submission of such standard notify the state and specify the changes to meet such requirements.

33 U.S.C. § 1313(c)(3). The authority to approve or disapprove state WQS has been delegated to the regional administrators. 40 C.F.R. § 131.21 provides:

(a) After the State submits its officially adopted revisions, the Regional Administrator shall either:

\*   \*   \*   \*   \*   \*

(2) Notify the State within 90 days that the revisions are disapproved. . . .

The CWA and the regulations thus make clear that EPA Region 10 had authority to approve or disapprove Idaho's water quality standards. *See also ManaSota–88, Inc. v. Tidwell,* 896 F.2d 1318, 1320, n. 3 (11th Cir. 1990) (stating that "[t]he Regional Administrator has the authority to approve or disapprove water quality standards submitted by the states. 40 C.F.R. §§ 131.20(c), 131.21(a)–(b).". The June 25, 1996, letter from EPA Region 10 constituted official approval and disapproval action of this nature.

Moreover, the parties stipulated on August 9, 1996, that the June 25 letter constituted final disapproval under § 1313(c)(3). In reliance on that stipulation, plaintiff Idaho Sporting Congress struck its partial summary judgment motion to compel EPA to act on Idaho's WQS. The EPA now contends that the stipulation was a mistake, but offers no persuasive reason to vacate it.

Because the June 1996 letter was an official disapproval under 33 U.S.C. § 1313(c)(3), the question whether the court should order the EPA to approve or disapprove Idaho's water quality standards is moot. That agency action has already been taken.

■ Actions under the citizen suit provision of the CWA may be brought to enforce nondiscretionary duties of the Administrator. 33 U.S.C. § 1365(a)(2). Section § 1313(c)(3) provides that where a state fails to revise a disapproved standard within ninety days, the EPA Administrator "shall promulgate such standard pursuant to paragraph (4) of this subsection." Paragraph (4) says that the "Administrator shall promptly prepare and publish proposed regulations" where necessary to meet the requirements of the CWA. The EPA argues that the phrase "shall promptly . . ." gives it discretion, and, thus, that there is no mandatory duty. This question has been addressed by the Ninth Circuit as follows:

Section 303(c)(3) uses mandatory language, stating the Administrator *shall* promulgate such standard [pursuant to Section 303(c)(4)]. The same mandatory language appears in Section 303(c)(4): 'The Administrator [of the EPA] *shall* promptly prepare and publish proposed regulations setting forth a revised or new water quality standard' if a state fails to adopt regulations within the specified period. *Id.* § 1313(c)(4) (emphasis added). There is no case law suggesting Section 303(c) leaves the Administrator any discretion to deviate from this apparently mandatory course.

*Idaho Conservation League, supra,* 946 F.2d at 720 (emphasis in original). *See also Raymond Proffitt Foundation v. U.S.E.P.A.,* 930 F.Supp. 1088, 1097 (E.D.Pa.1996) ("The language and design of the Clean Water Act as a whole supports [sic] the court's conclusion that the duty imposed on the Administrator

under § 1313(c)(4) is nondiscretionary."). By the plain language of the statute, and under the cited authorities, the EPA's duty under § 1313(c)(4)(A) is mandatory.

■ It must next be determined whether the EPA has acted "promptly" under § 1313(c)(4)(A). Two prior district court cases, holding that the agency had not acted promptly, declined to set a bright line rule. *See Defenders of Wildlife v. Browner*, 909 F.Supp. 1342 (D.Ariz.1995) (eleven- and nineteen-month delays); *Proffitt, supra*, 930 F.Supp. 1088 (E.D.Pa.1996) (588–day delay). Here, the EPA took almost two years after Idaho submitted its WQS to issue its disapproval. That earlier delay is now compounded by the seven months that have gone by since disapproval. As a matter of law, the EPA has failed to perform its mandatory duty to promptly prepare and publish water quality standards for Idaho.

■ As to the Administrative Procedure Act claims, the Ninth Circuit recently articulated the standard of review as follows:

> Under the Administrative Procedure Act ("APA"), "the reviewing court shall . . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Longview Fibre*, 980 F.2d at 1313. We recently noted, [t]he APA does not give this court power "to substitute its judgment for that of the agency" but only to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *[Citizens to Preserve] Overton Park [, Inc. v. Volpe]*, 401 U.S. [402,] 416 [91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)]. We may reverse only if the decision was "arbitrary and capricious" within the meaning of the APA, 5 U.S.C. § 706(2)(A), in that the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Beno v. Shalala*, 30 F.3d 1057, 1073 (9th Cir.1994) (quoting *Motor Vehicle Mfrs.*

*Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 44, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983)).

*Dioxin/Organochlorine Center v. Clarke*, 57 F.3d 1517, 1521 (9th Cir.1995). Here, the EPA's failure to carry out duties clearly mandated by the CWA has been arbitrary, capricious, and not in accordance with law, and thus a violation of the APA.

For the reasons stated, it is ordered that:

1. Plaintiffs' motion is granted and the EPA's motion is denied; and

2. The EPA is directed to promulgate water quality standards for Idaho in accordance with its June 1996 letter of disapproval, and to serve and file notice thereof in this case, within sixty days of the date of this order.