KEN–N.K., INC., doing business as Uncle Buck's Northern Exposure, a Michigan Corporation; Kenneth R. Canfield; Nina R. Canfield, Plaintiffs–Appellants,

v.

VERNON TOWNSHIP, a Michigan District of Michigan Municipal Corporation; Shiawassee County; Michigan Liquor Control Commission; Jacquelyn A. Stewart, Chairman of the Board, individually; Frank J. Kelly, individually, Defendants–Appellees.

No. 98–1871.

United States Court of Appeals, Sixth Circuit.

Aug. 23, 2001.

Before BATCHELDER and MOORE, Circuit Judges; O'MALLEY, District Judge.*

## OPINION

MOORE, Circuit Judge.

Appellants Ken and Nina Canfield, and Ken–N.K., Inc. d/b/a Uncle Buck's Northern Exposure ("Canfields"), appeal from a district court judgment dismissing their 42 U.S.C. § 1983 complaint on jurisdictional grounds.

## I. BACKGROUND

The Canfields own a restaurant/tavern known as the "Crossroads Lounge" in Vernon Township, Shiawassee County, Michigan. The lounge is located in a B–1 "Commercial" zoning district, where "[r]estaurants and taverns serving meals, snacks, or beverages for indoor consumption" are permitted as of right.[1] Shiawassee County, Mich., Zoning Ordinance § 9.14.2(I) (Dec. 22, 1981). In August of 1997, the Canfields secured the approval of the township for an entertainment permit, to be issued by the Michigan Liquor Control Commission ("MLCC"). The Canfields did not advise the township officials that the entertainment they intended to present included topless dancing; however, the entertainment permit issued by MLCC allowed such dancing.

In January of 1998, the Canfields renamed their business "Uncle Buck's Northern Exposure," and, without applying for a building permit, began to make various alterations to the establishment's structure. On January 21, the Canfields visited the county zoning office to ask whether the local zoning ordinance would allow an "adult entertainment" facility to be opened at Uncle Buck's. Within a week, county officials sent the Canfields two letters indicating that adult entertainment was not one of the uses listed in the ordinance as a use as of right in a B–1 district, and the Canfields would have to apply to the zoning board of appeals for a use classification. The Canfields did not apply for a use classification, but began presenting female topless dancers at Uncle Buck's on January 30. The same day, the township issued a stop work order for the construction at Uncle Buck's. The Canfields obtained a building permit on February 2, but the township revoked it the next day, noting in the revocation letter that the Canfields were not in compliance with county zoning law and citing the letters to that effect that county officials had very recently sent the Canfields.

On February 4, 1998, the county filed suit against the Canfields in Shiawassee Circuit Court, seeking to enjoin the Canfields' use of their property for adult entertainment purposes because it violated the county's zoning ordinance and was a nuisance per se. Answering the county's complaint, the Canfields claimed that the zoning ordinance was unconstitutional as applied and on its face. After an evidentiary hearing, the state court issued a preliminary injunction against the continued use of the property for adult entertainment, noting that the ordinance did not prohibit adult entertainment entirely, and opining that the Canfields were not likely to prevail on their constitutional arguments. The Canfields appealed the state court injunction.

On March 9, 1998, the township passed the Vernon Township public nudity ordi-

---

* The Honorable Kathleen McDonald O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Crossroads Lounge held a Michigan Class C liquor license, which permits sale of alcohol by the glass.

nance, Ordinance No. 11, which essentially prohibited topless dancing within the township. During the federal proceedings—the proceedings before us here—the township stipulated that it would not enforce the ordinance against the Canfields, and shortly thereafter, repealed the ordinance.

On April 13, 1998, the State of Michigan amended its Liquor Control Act. The revised statute provides, among other things, that in counties with populations of 95,000 or less, no on-premises licensee shall permit topless dancing without first applying for a topless activity permit from the MLCC. In a newspaper interview, the chairwoman of the House Regulatory Affairs Committee indicated that the law was designed "to fix Durand's problems." (Vernon Township is just outside of Durand.) Jerry Ernst, *Limits on Nude Dancing Criticized,* Flint Journal (Flint, Mich.), Apr. 16, 1998, at E1 (included in Joint Appendix ("J.A.") at 294–95). The chairwoman also noted that the statute's 95,000 population figure was intended to pertain to Shiawassee and Eaton Counties.

Also on April 13, 1998, the Canfields wrote to the Shiawassee Community Development Director requesting a determination of whether a non-alcoholic adult entertainment dance club or an adult bookstore would be permitted at the site where they currently operated Uncle Buck's. The Director responded that the dance club would not be a use permitted as of right in a B–1 zoning district, where Uncle Buck's is located, and that he did not have sufficient information to determine whether the adult bookstore would be a permitted use. The Canfields then requested that the county zoning board classify three particular uses: 1) an establishment serving alcoholic beverages and offering topless dancing—the current use of the premises; 2) an establishment serving non-alcoholic beverages and offering fully nude dancing; and 3) an adult bookstore/video store/sexual toy store with private viewing booths for x-rated movies. In addition, the Canfields appealed the earlier determination by county officials that topless dancing represented a change in use of the premises. The board held a meeting on June 17, 1998, and five days later issued its decision upholding the change-in-use determination of the county officials, classifying the Canfields' first two proposed uses as uses permitted by right in a B–3 Commercial Zoning District, and tabling the request for classification of the third proposed use. The Canfields then appealed this determination to the same Shiawassee Circuit Court, at which point this appeal was consolidated with the Canfields' appeal of the county injunction action. The newly-consolidated appeal was argued in September 2000, and the state court has yet to issue a decision in these matters.

On April 16, 1998, the Canfields filed a complaint in federal court naming as defendants Vernon Township; Shiawassee County; the Michigan Liquor Control Commission; Jacquelyn A. Steward, Chairman of the Commission, in her individual capacity; and Frank J. Kelley, Attorney General of Michigan, in his individual capacity. The complaint alleged that both the township's public nudity ordinance and the county's zoning ordinance violated the Canfields' First, Fifth, and Fourteenth Amendment rights, and sought a declaratory judgment, injunction, and attorney fees under 42 U.S.C. § 1988. Further, the complaint sought declaratory and injunctive relief and attorney fees against the state defendants, claiming that §§ 916 and 917 of the Michigan Liquor Control Recodification Act constituted a bill of attainder in violation of Article I, section 10 of the United States Constitution, violated the Canfields' procedural and substantive

due process rights as guaranteed by the Fifth Amendment, and violated the Equal Protection Clause of the Fourteenth Amendment. The Canfields then filed a motion for a temporary restraining order and preliminary injunction on all of the claims in the complaint. The district court denied the motion and dismissed all of the claims as to all of the defendants. The court held that the claims against the township were not ripe because the township had not enforced or threatened to enforce its public nudity ordinance against the Canfields. Invoking the abstention doctrines of *Rooker–Feldman* and *Younger*, the court declined to decide the claims against the county because the Michigan courts were considering the nuisance abatement action brought by the county in which the Canfields had raised their constitutional claims as a defense. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Finally, the court concluded that the claims against the state defendants were barred by the Eleventh Amendment and did not present a case or controversy.

The Canfields filed a motion for reconsideration which the district court denied. This timely appeal followed.

## II. THE COUNTY DEFENDANTS

The challenged provisions of the Shiawassee County Zoning Ordinance state:

A use of land, buildings, or structures not specifically mentioned in the provisions of this ordinance shall be classified upon appeal or by request of the Zoning Administrator by the Board of Appeals pursuant to Section 6.4.4 of this ordinance.

Shiawassee County Zoning Ordinance § 9.3(C).

The Board of Appeals shall have the power to:

. . .

C. Classify, upon receipt of an application therefore, a use which is not specifically mentioned in the use regulations of any district according to the following standards:

(1) The unmentioned use shall conform to the purpose and intent of the district in which it is allowed as a permitted principal use or accessory use or as a special land use.

(2) The chosen use classification and permitted district(s) shall be that (those) which is (are) most similar to the unmentioned use being classified.

The classification of the unmentioned use does not automatically permit the use, it only identifies the district in which it may be located and the zoning regulations with which it must conform.

*Id.* § 6.4.4.

Proceeding on the theory that the Canfields' presentation of topless dancing was a change in use that required classification in accordance with the zoning ordinance, the county brought an action in state court to enjoin such use. The Canfields defended by claiming that the zoning ordinance violated the First Amendment. The state court granted the injunction, ruling that the Canfields were unlikely to succeed on their First Amendment claim. Two weeks later, the Canfields brought this federal court action seeking declaratory and injunctive relief on the grounds that the zoning ordinance violates the First Amendment. Relying on the *Younger* abstention and *Rooker–Feldman* doctrines, the district court declined to exercise jurisdiction

over the matter. We review that decision de novo. *Traughber v. Beauchane,* 760 F.2d 673, 676 (6th Cir.1985).

■ Abstention in favor of state proceedings is proper where there exist: (1) ongoing state judicial proceeding; (2) an important state interest; and (3) an adequate opportunity in the state judicial proceedings to raise constitutional challenges. *Fieger v. Thomas,* 74 F.3d 740, 744 (6th Cir.1996). The Canfields' challenge to the Shiawassee County zoning ordinance is a textbook candidate for abstention. There are ongoing state judicial proceedings: the Canfields' appeal of the county injunction action and county zoning board use classifications is still pending. These ongoing proceedings implicate an important state and local interest: the enforcement and application of zoning ordinances and land-use regulations. *See, e.g., Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–04, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (applying *Younger* abstention where state brought a civil nuisance action against a theater showing pornographic movies); *World Famous Drinking Emporium, Inc. v. City of Tempe,* 820 F.2d 1079, 1083 (9th Cir.1987) (holding that a city's civil enforcement action to compel compliance with a municipal zoning ordinance involved an important state interest). Finally, the Canfields had the opportunity to raise, and did in fact raise, their constitutional claims in the state court proceedings.

Abstention was therefore appropriate unless the Canfields can demonstrate that one of the three exceptions to the *Younger* abstention doctrine applies: (1) "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman,* 420 U.S. at 611, 95 S.Ct. 1200; (2) "the challenged statute is flagrantly and patently violative of express constitutional prohibitions[,]" *Moore v. Sims,* 442 U.S. 415, 424, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (quotation omitted); or, (3) there is "an extraordinarily pressing need for immediate federal equitable relief," *Kugler v. Helfant,* 421 U.S. 117, 125, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). These exceptions have been interpreted narrowly. *Zalman v. Armstrong,* 802 F.2d 199, 205 (6th Cir. 1986).

■ The Canfields argue that the state court action in this case was prosecuted in bad faith. In support of this allegation, they note that a county official was quoted in the papers as saying that "the County could go after Canfield through criminal channels, citing him for misdemeanor zoning violations," and that the county refused to allow them a permit to reinstall pizza ovens without a site plan review, even though the county has only a "spotty history" of performing such reviews. While these incidents are troubling, they do not suffice to establish a pattern or practice of discriminatory enforcement that would suggest that the different, albeit related, action of seeking the injunction was motivated by bad faith. *Fieger,* 74 F.3d at 750 (applying an equal protection analysis to determine whether a claim of selective prosecution amounted to bad faith). This is particularly true given that both of the incidents cited by the Canfields occurred after the state court action had been filed.[2]

2. Commentators have noted that the Supreme Court has applied the "bad faith" exception to only one specific set of facts: where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions. Erwin Chemerinsky, Federal Jurisdiction § 13.4, at 806–08 (3d ed.1999). In this case, Shiawassee County followed through with its nuisance suit against the Canfields and, indeed, was successful in enjoining the Canfields from continuing to present adult entertainment. The facts of this case simply do not fit within

Because none of the exceptions to *Younger* apply in this case, it is clear that the district court did not err in abstaining on *Younger* grounds.

■ Although we agree with the district court that *Younger* abstention was appropriate, rather than dismissing the Canfields' constitutional claims against the county, the district court should have stayed the plaintiffs' claims until the state court proceedings concluded. *Brindley v. McCullen,* 61 F.3d 507, 509 (6th Cir.1995). As we noted in *Brindley,* "[i]ssuing a stay avoids the costs of refiling, allows the plaintiffs to retain their place on the court docket, and avoids placing plaintiffs in a sometimes difficult position of refiling their case before the statute of limitations expires." *Id.* Thus, in the event the state courts fail to address the merits of the Canfields' constitutional claims in resolving any appeal of the county's injunction action, a federal forum for these claims is preserved. Staying the proceedings also will give plaintiffs an opportunity to amend their complaint to seek monetary damages under 42 U.S.C. § 1983, an option they originally wished to pursue at the district court level. J.A. at 764 (Pls.' Reply Br. to Shiawassee County). Because we decide this issue on the grounds of *Younger* abstention, we do not reach the question of the applicability of the *Rooker–Feldman* doctrine.

## III. THE MICHIGAN STATUTE AND THE STATE DEFENDANTS

The sections of the Michigan statute that were challenged at the district court level provide:

(3) An on-premises licenses shall not allow topless activity on the licensed premises unless the licensee has applied for and been granted a topless activity permit by the commission. This section is not intended to prevent a local unit of government from enacting an ordinance prohibiting topless activity or nudity on a licensed premises located within that local unit of government. This subsection applies only to topless activity permits issued by the commission to on-premises licensees located in counties with a population of 95,000 or less.

.     .     .     .

(8) In the case of a licensee granted an entertainment or dance permit under R. 436.1407 of the Michigan administrative code who, after January 1, 1998, extended the activities conducted under that permit to regular or fulltime topless activity, that licensee shall apply to the commission for a topless activity permit under this section within 60 days after the effective date of this section in order to continue topless activity. Except as otherwise provided for in this subsection, this section applies only to entertainment or dance permits issued after the effective date of this section.

Mich. Comp. Laws § 436.1916(3), (8). The section has an effective date of April 14, 1998. Issuance of a topless activity permit requires the approval of the MLCC, the local legislative body, and the chief law enforcement officer of the jurisdiction. *Id.* § 436 .1916(6).

■ The district court concluded that the Eleventh Amendment barred the claims against the state defendants. The court also held that the Canfields lacked standing and that their challenge was not ripe. After reviewing the unusual status of the concurrent state and federal litigation ongoing in this case, we conclude that the plaintiffs have no standing at this stage of the proceedings to bring their claims against the state defendants. More specif-

the Supreme Court's narrow interpretation of     the bad faith exception.

ically, the plaintiffs lack Article III standing because they are unable to demonstrate with specific, concrete facts that they "personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

It is well established that in order to invoke a federal court's jurisdiction, a party must demonstrate:

> (1) injury in fact, by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative.

*Northeastern Fla. Contractors Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663–64, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (quotations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The plaintiffs have suffered an injury in fact in this case arising from the operation of the Michigan statute. A close reading of § 436.1916(8) makes clear that any business wishing to conduct "topless activity" on its premises that had previously received an entertainment license from the MLCC was *required* to apply for a topless activity permit from the MLCC within sixty days of April 14, 1998, the effective date of this provision, in order to continue conducting topless activity. Because the Canfields did not apply for this permit at all, let alone within sixty days of the statute's effective date, the Michigan statute automatically revoked their right to conduct topless activity, thus effectively invalidating a portion of the plaintiffs' previously-issued entertainment license. As we have noted, the revocation of a plaintiff's license or permit constitutes "a distinct and palpable injury in fact[.]" *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1075 (6th Cir.1994). Thus, this element of the Supreme Court's Article III standing test has been met.[3]

Although the Canfields have met the first element of the Article III standing test, it is clear that they are unable to meet the test's "redressability" requirement. As stated above, the redressability element of Article III standing requires the plaintiffs to show that, should this court decide in their favor with respect to the validity of the state statute, a favorable decision in this regard would likely remedy the injury. As Chemerinsky explains, the redressability requirement ultimately asks: "Will the federal court decision make a difference?" Chemerinsky, Federal Jurisdiction § 2.3.3, at 74. In this case, there

---

**3.** The automatic operation of the Michigan statute resulting in the denial of the Canfields' right to present topless activity also made their claims against the state defendants ripe for review. As we have explained, "[r]ipeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 284 (6th Cir.1997). Indeed, ripeness is typically at issue when an individual is seeking *pre-enforcement* review of a statute or regulation. *Kardules v. City of Columbus*, 95 F.3d 1335, 1343 (6th Cir.1996). As we explained above, this is not a case of pre-enforcement review of the Michigan statute. To the contrary, the Michigan statute has already operated to deprive the Canfields of their right, under the entertainment permit previously issued to them by the MLCC, to conduct topless activity on their premises.

simply is no telling whether any relief we might award to the plaintiffs with regard to the state statute would have any effect on their ability to present topless dancing at Uncle Buck's.

As the litigation now stands, the Canfields cannot present topless dancing at Uncle Buck's in its present location because the county zoning ordinance does not permit that kind of entertainment within that zoning district. No action taken by this court with regard to the validity of the state permit scheme could provide the Canfields with the relief they seek because that relief is entirely contingent on the outcome of the state court proceedings regarding the county zoning ordinance. If the county ordinance is ultimately upheld at the conclusion of the ongoing state litigation, it will serve as an independent bar to the Canfields' presenting topless dancing in Shiawassee County. In that event, it is clear that any ruling we make with respect to the Michigan statute would not provide them with the relief they seek: the ability to present topless dancing at Uncle Buck's. Thus, due to the ongoing state court litigation, the redressability of the Canfields' claims against the state defendants is simply too speculative at this time to provide the Canfields with Article III standing.

If, however, the county ordinance is struck down in the state court proceedings, then it is clear that the only provision preventing the plaintiffs from presenting topless dancing would be the Michigan statute. In that case, the plaintiffs' standing to challenge the state statute would be firmly rooted. Thus, given the extraordinary circumstances of this case, we believe that the best course of action is to stay, rather than dismiss, the plaintiffs' claims against the state defendants along with staying their claims against the county. While our general practice is to dismiss claims if there is no standing, in this case,

it is the ongoing state court proceedings that render the plaintiffs' standing to sue the state defendants uncertain. By staying the plaintiffs' claims against the state defendants until the conclusion of the state court proceedings, we ensure that, if the plaintiffs can successfully challenge the county ordinance in the state court proceedings, there will be a federal forum available for their then-proper constitutional claims against the state defendants.

We acknowledge that, because of its standardless nature, § 6 of the Michigan statute might, in another case, chill the exercise of First Amendment rights and thus create standing to sue. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) ("[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially...."). In this case, however, the expressive activity the Canfields seek to practice, *i.e.*, presenting topless dancing at their liquor establishment, is already prohibited by the county zoning ordinance. If the county prevails in the state court action, the recently enacted Michigan statute will have no effect whatsoever–chilling or otherwise–on the Canfields' activities at their current location.

Because the Plaintiffs lack standing at this time, we need not address whether any of the state defendants are immune from suit under the Eleventh Amendment. Determination of Eleventh Amendment immunity and application of the *Ex Parte Young* exception to that immunity are inextricably bound to the constitutionality of the acts performed by the government officials. Here, we do not reach the constitutionality of the Michigan statute. Accordingly, we REMAND the plaintiffs' claims against the county and state defendants to the district court with instructions to

STAY THE PROCEEDINGS pending resolution of the state court litigation.

## IV. THE TOWNSHIP DEFENDANTS

■ The township repealed its public nudity ordinance shortly after the conclusion of proceedings in the district court. Both parties agree that the Canfields' constitutional challenge to the ordinance is now moot. However, the Canfields argue that the repeal makes them "prevailing parties" eligible for attorney fees within the meaning of 42 U.S.C. § 1988. We disagree.

This circuit has previously held that, even when no judicial relief is ordered in a plaintiff's favor, the plaintiff can still be considered a prevailing party if the "lawsuit produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment[.]" *Payne v. Bd. of Educ., Cleveland City Schs.,* 88 F.3d 392, 397 (6th Cir.1996) (quotation omitted). In these situations, under past circuit precedent, the plaintiff was required to show that it was their suit which was the "catalyst" that sparked the defendant's change in past practices. *Id.*

■ The Supreme Court, however, has recently struck down the use of the "catalyst theory" as a permissible basis for an award of attorney fees. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 531 U.S. 1004, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Rather than consider a plaintiff to have "prevailed" when its suit caused the defendant voluntarily to change its past conduct, the Supreme Court in *Buckhannon* held that only an enforceable judgment on the merits or a court-ordered consent decree can serve as the basis for prevailing party status and, thus, an award of attorney fees. Because the Canfields obtained neither a judgment on the merits nor a consent decree with respect to their claims against

the township defendants, they cannot be considered "prevailing parties" under 42 U.S.C. § 1988. Thus, their request for attorney fees is DENIED.

## V. CONCLUSION

For the foregoing reasons, we REMAND the plaintiffs' claims against the state and county defendants with instructions to STAY THE PROCEEDINGS pending resolution of the state court litigation, and DENY the Canfields' request for attorney fees with respect to their claims against the township defendants.

ALICE M. BATCHELDER, Circuit Judge, concurring in part and dissenting in part.

ALICE M. BATCHELDER, Circuit Judge.

I concur with the majority's conclusion that the plaintiffs lack standing to bring this claim at this point in time, because given the zoning dispute proceeding in state court, we are unable to grant the injunctive relief sought. I respectfully dissent in regard to the majority's determination to maintain jurisdiction over the matter pending the outcome of the state case.

First, I think that the appropriate procedure in this case would be to dismiss without prejudice rather than to stay the proceedings. In *Quackenbush v. Allstate Insurance Co.,* 517 U.S. 706, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), the Supreme Court summarized the options available to the federal courts when declining to decide the merits of a case on abstention grounds:

> We have thus held that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to the state

court. By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.

In this case the Canfields have not sought money damages; the only relief they request is equitable in nature. Therefore, *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075–76 (6th Cir. 1998), in which the plaintiff sought money damages under 42 U.S.C. § 1983, simply has no bearing on the proper disposition of this case. The question is whether this case presents "otherwise appropriate circumstances" for dismissal. Because it is highly likely that the state courts can resolve all issues in the case so far as the County is concerned, including the constitutional ones, I think that dismissal represents the most logical disposition of this case.

Second, we have not concluded that there is no standing or ripeness in this case on abstention grounds; rather, the proposed opinion concludes that the inability of the Canfields to comply with the county zoning requirements means that the State may never have the opportunity to enforce the statute against them. That may change depending on the outcome of the state court proceedings or a future relocation of the Canfields' operation. Either eventuality would make ripe the claims against the State and confer standing on the Canfields; dismissal without prejudice assures the availability of a federal forum for resolution of their constitutional claims. Until one of these events happens, however, our jurisdiction remains entirely hypothetical because it depends on contingent events. In such circumstances, I think dismissal is constitutionally required:

> We decline to endorse [the doctrine of hypothetical jurisdiction] because it car-

ries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers. This conclusion should come as no surprise, since it is reflected in a long and venerable line of our cases. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868).

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Since the claims against the State here confront two jurisdictional bars, I see nothing left for us to do but declare the fact and dismiss without prejudice.